1  BRODSKY MICKLOW BULL & WEISS LLP
   KURT MICKLOW, State Bar No. 113974
2  kmicklow@bmbwlawfirm.com
   EDWARD M. BULL III, State Bar No. 141966
3  ebull@bmbwlawfirm.com
   1070 Marina Village Parkway, Suite 200
4  Alameda, CA 94501
   Telephone:  (510) 268-6180
5  Facsimile:   (510) 268-6181

6  Attorneys for Plaintiff
   CEFERINO GALEON
7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12

13 CEFERINO GALEON,                    )   CASE NO.
                                       )
14              Plaintiff,             )   **SEAMAN'S COMPLAINT**
                                       )   **FOR PERSONAL INJURY -**
15 vs.                                 )   **NEGLIGENCE UNDER THE**
                                       )   **JONES ACT; BREACH OF**
16                                     )   **THE WARRANTY OF**
   APL MARITIME LTD.; AMERICAN         )   **SEAWORTHINESS; AND**
17 PRESIDENT LINES LTD.;               )   **MAINTENANCE AND CURE**
   WILMINGTON TRUST COMPANY;           )
18 and DOES 1-5, *in personam,* and    )   **DEMAND FOR JURY TRIAL**
   M/VAPL PEARL, her engines, tackle,  )
19 apparel, furniture, and appurtenances, *in* )  **[Pursuant to 28 U.S.C. §1916**
   *rem*;                              )   **Plaintiff is Entitled to File this**
20                                     )   **Complaint Without Prepayment**
                Defendants.            )   **of Court Filing Fee]**
21                                     )
   _____
22

23                     **I.**

24            **GENERAL ALLEGATIONS**

25      1.      Plaintiff CEFERINO GALEON ("Plaintiff") brings and maintains this

26 action based upon the General Maritime Law pursuant to the United States

27 Constitution Article III, Section 2, the Jones Act (46 U.S.C. §30104) and 28

28 U.S.C. §1333.

2.     Plaintiff was at all times herein a seaman within the meaning of the Jones Act (46 U.S.C. §30104) and the General Maritime Law.  As such, Plaintiff is entitled under the provisions of 28 U.S.C. §1916 to bring this Complaint without prepayment of court's filing fee or the posting of a bond.

3.     Plaintiff is an American citizen and resides within the Central District of California.

4.     Plaintiff is informed and believes and thereon alleges that at all times relevant Defendant APL MARITIME LTD., was and is a Delaware corporation licensed do business within the State of California and is subject to personal jurisdiction in this district.

5.     Plaintiff is informed and believes and thereon alleges that at all times relevant Defendant AMERICAN PRESIDENT LINES LTD., was and is a Delaware corporation licensed do business within the State of California and is subject to personal jurisdiction in this district.

6.     Plaintiff is informed and believes and thereon alleges that at all times relevant Defendant WILMINGTON TRUST COMPANY was and is a Delaware corporation that transacts business within the State of California and is subject to personal jurisdiction in this district.

7.     Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1-5, inclusive, and therefore, Plaintiff sues these Defendants by such fictitious names.  Plaintiff will amend the Complaint to allege their true names and capacities when ascertained.  In the meantime, Plaintiff is informed and believes that each of the fictitiously named Defendants is affiliated in one way or another with the named Defendants and/or the ownership and/or operation of M/V PEARL during the times in question, and is responsible in some manner for the occurrences herein alleged.

8.     *In rem* Defendant M/V APL PEARL ("the Vessel") is a 292 meter

1  long container ship built in 1998 with a gross tonnage of 65475.  At the time of the
2  events in question in early 2015, M/V APL PEARL was trading as an American
3  flagged vessel owned and/or operated by *In Personam* Defendants APL
4  MARITIME LTD., AMERICAN PRESIDENT LINES LTD., WILMINGTON
5  TRUST COMPANY and/or DOES 1-5, inclusive, with its home port in Oakland,
6  California.  Plaintiff is informed and believes and thereon alleges that in the
7  months following his personal injury accident on or about March 16, 2015, the
8  M/V APL PEARL was re-flagged under the laws of Singapore possibly under new
9  ownership.  However, under the maritime law of the United States, Plaintiff retains
10  a maritime lien against *in rem* Defendant M/V APL PEARL for his personal injury
11  claims that survives any re-flagging or transfer of ownership of the Vessel.
12  Plaintiff is informed and believes that *in rem* Defendant M/V APL PEARL is or
13  will be within the Central District of California at some time during the pendency
14  of this action.

15        9.     Plaintiff is informed and believes that all of the Defendants, including
16  those sued as DOES 1-5 herein, were and are the agents, alter egos, partners, joint
17  venturers, co-conspirators, principals, shareholders, servants, employers,
18  employees of their co-Defendants, and in doing the things hereinafter mentioned,
19  were acting within the course and scope of their authority as such agents, alter
20  egos, partners, joint venturers, co-conspirators, principals, shareholders, servants,
21  employers, and employees with the permission, ratification or consent of their
22  co-Defendants and thus are legally liable for all of the damages, including punitive
23  damages, resulting from the acts or omissions of the others.

24        10.    At all times relevant, Defendants APL MARITME LTD.,
25  AMERICAN PRESIDENT LINES LTD., WILMINGTON TRUST COMPANY
26  and DOES 1-5, inclusive, were the legal owners and operators of M/V APL
27  PEARL responsible for safely managing, crewing, maintaining, controlling,
28  outfitting, repairing and navigating the Vessel.

11.     At all times relevant, including the date of Plaintiff's accident on or about March 16, 2015, Plaintiff was employed by Defendants APL MARITME LTD., AMERICAN PRESIDENT LINES LTD., WILMINGTON TRUST COMPANY and DOES 1-5, inclusive, as an Able Bodied Seaman ("AB") in the deck department aboard the M/V APL PEARL.  As such, Plaintiff had the legal status of a "seaman" within the meaning of the Jones Act (46 U.S.C. §30104) and under the General Maritime Law.

12.     On or about March 16, 2015, while the Vessel was docked in Dubai, United Arab Emirates, Plaintiff was ordered to assist in a work detail to offload pallets of equipment from M/V APL PEARL to a flatbed truck below on the dock. The operation began before Plaintiff was ordered to assist and was commenced under the supervision of the Vessel's officers.  During Plaintiff's participation in the offloading, he and the crane operator involved were working under the direct supervision and command of the bosun.

13.     The offloading operation required a high degree of coordination between the crane operator on the Vessel and Plaintiff who was handling the positioning of the pallets on the truck below.  Plaintiff and the crane operator could not see one another, so the bosun decided that he would act as the signalman who would signal the crane operator when to stop or pause the lowering of the crane hook and when to hoist the empty hook after it was unhooked from the pallet.  The procedure employed was for Plaintiff to signal to the bosun once the hook was clear from the pallet cables; then the bosun was supposed to signal the crane operator to safely lift the hook.

14.     After the work detail had loaded a number of pallets onto the truck without incident, Plaintiff suffered severe and disabling injuries to his back, elbow, left calf, and other parts of his body when the crane hook was, prematurely and without any signal from Plaintiff, unexpectedly hoisted while the load was still fastened.  Either the bosun gave the lift order prematurely or the crane

operator lifted too early without any signal.  In either event, the improper and untimely hoisting of the crane hook and loaded pallet nearly crushed Plaintiff between the loaded pallet and the stacked pallets behind him.  Plaintiff was forced to resist the excessive lateral forces of the pallet, and as a result, he suffered severe orthopedic injuries ("the Incident").

15.     As a direct result of the negligence of the Defendants and the unseaworthiness of the Vessel, Plaintiff has suffered physical injuries and disability, which in turn have caused him past and probable future pain and suffering, loss of career, and emotional injuries.  Plaintiff has incurred past economic losses, including medical expenses, past lost wages, and past loss of employment benefits.  Given the nature of Plaintiff's injuries, Plaintiff will also suffer future loss of earnings and benefits as well, all caused by the negligence of the Defendants and the unseaworthiness of the Vessel.

## II.

## FIRST CLAIM FOR RELIEF

### (For Jones Act Negligence Against All *In Personam* Defendants)

16.     Plaintiff refers to and by that reference incorporates as though fully set forth herein each and every allegation contained in paragraphs 1 through 15, above.

17.     Defendants, and each of them, owed Plaintiff a duty to use reasonable care in all aspects of the employment relationship between them and, among other things, to provide Plaintiff with a reasonably safe place to work.

18.     Defendants, and each of them, breached this duty of care in a number of ways, including, but not limited to, the following:

(a)     failing to provide Plaintiff with a safe place to work;

(b)     directing and allowing dangerous and unsafe work methods to be employed to unload the pallets of equipment from the Vessel to a flatbed truck on the dock below;

(c)     failing to properly communicate and/or signal on the part of the bosun and/or the crane operator which led to the crane operator to prematurely hoist the crane's hook while the pallet was still attached;

(d)     the bosun not waiting for the crane's hook to be removed before allowing the load to be hoisted;

(e)     allowing the offloading of the pallets to be supervised by a bosun who was not properly trained, who was inattentive and/or who lacked the requisite knowledge and/or experience to supervise the project safely;

(f)     failing to perform appropriate job hazard analyses concerning the offloading of the pallets of equipment from the Vessel;

(g)     not having an adequate number of crew assisting Plaintiff;

(h)     not having an adequately trained crane operator operating the crane;

(i)     failing to properly train the bosuns and crane operators on the methods to be employed in order to safely offload pallets from the Vessel using the crane;

(j)     failing to institute proper safety guidelines for the offloading of pallets from the Vessel using the crane;

(k)     failing to exercise ordinary care under the circumstances to have the vessel's training, equipment, work methods and work environments in such a condition that Plaintiff would be able to perform his required duties with reasonable safety; and

(l)     not abiding by the safety laws, regulations, statutes and customs and practice necessary for safety at sea with regard to providing a safe work environment free from the risk of a heavy load being hoisted unexpectedly and without signal by a crane operator.

19.     As a result of the aforesaid negligent acts and omissions, among others, Defendants, and each of them, breached the duty of care they owed to Plaintiff.

20.     As a legal result of such negligence on the part of Defendants, and each of them, Plaintiff has sustained physical and emotional injuries.

21.     As a further legal result of the negligence of Defendants, and each of them, Plaintiff has sustained and will continue to sustain economic damages, including without limitation, past and future medical expenses and past and future loss of earnings and benefits, all of which will be established at trial according to proof.

22.     As a further legal result of the negligence of Defendants, and each of them, Plaintiff has incurred and will in the future incur non-economic damages, including physical and emotional pain and suffering, all of which will be established at trial according to proof.

## III.

## SECOND CLAIM FOR RELIEF

### (For Breach of the Warranty of Seaworthiness Against All

### *In Personam* Defendants and *In Rem* Against M/V APL PEARL)

23.     Plaintiff refers to and by that reference incorporates as though fully set forth herein each and every allegation contained in paragraphs 1 through 22, above.

24.     At all times herein relevant, Plaintiff was acting in the service of M/V APL PEARL performing duties of the type traditionally performed by a seaman and whose presence was necessary for the operation of the Vessel.

25.     By the provisions of the General Maritime Law of the United States, Defendants, and each of them, by and through their agents, employees and servants, warranted to Plaintiff that M/V APL PEARL, and her decks, gear, passageways, equipment, appurtenances, tools, crew members, training, work methods and work environments were seaworthy and in compliance with applicable laws, statutes, standards and regulations enacted for the safety of the crew.

26.   As alleged herein, M/V APL PEARL, her decks, lines, gear, passageways, equipment, appurtenances, tools, crew members, training, work methods and work environments were not seaworthy and were not in compliance with applicable laws, statutes, standards and regulations enacted for the safety of the crew.  Defendants, and each of them, *in personam*, and M/V APL PEARL *in rem* violated and breached the warranty of seaworthiness owed Plaintiff in the following respects, among others:

(a)   failing to provide Plaintiff with a safe place to work;

(b)   directing and allowing dangerous and unsafe work methods to be employed to unload the pallets of equipment from the Vessel to a flatbed truck on the dock below;

(c)   failing to properly communicate and/or signal on the part of the bosun and/or the crane operator which led to the crane operator to prematurely hoist the crane's hook while the pallet was still attached;

(d)   the bosun not waiting for the crane's hook to be removed before allowing the load to be hoisted;

(e)   allowing the offloading of the pallets to be supervised by a bosun who was not properly trained, who was inattentive and/or who lacked the requisite knowledge and/or experience to supervise the project safely;

(f)   failing to perform appropriate job hazard analyses concerning the offloading of the pallets of equipment from the Vessel;

(g)   not having an adequate number of crew assisting Plaintiff;

(h)   not having an adequately trained crane operator operating the crane;

(i)   failing to properly train the bosuns and crane operators on the methods to be employed in order to safely offload pallets from the Vessel using the crane;

(j)   failing to institute proper safety guidelines for the offloading of pallets from the Vessel using the crane;

(k)     failing to exercise ordinary care under the circumstances to have the vessel's training, equipment, work methods and work environments in such a condition that Plaintiff would be able to perform his required duties with reasonable safety; and

(l)     not abiding by the safety laws, regulations, statutes and customs and practice necessary for safety at sea with regard to providing a safe work environment free from the risk of a heavy load being hoisted unexpectedly and without signal by a crane operator.

27.     As a legal result of these breaches, Plaintiff sustained physical and emotional injuries.

28.     As a further legal result of Defendants' breaches, Plaintiff has sustained and will continue to sustain economic damages, including without limitation, past and future medical expenses and past and future loss of earnings and benefits, all of which will be established at trial according to proof.

29.     As a further legal result of Defendants' breaches, Plaintiff has incurred and will in the future incur non-economic damages, including physical and emotional pain and suffering, all of which will be established at trial according to proof.

30.      Plaintiff has and is asserting herein a maritime lien and an *in rem* claim against M/V APL PEARL for all of the above described economic and non-economic damages caused by her unseaworthiness.

## IV.

## THIRD CLAIM FOR RELIEF

### (For Maintenance and Cure *In Personam* Against All

### *In Personam* Defendants and *In Rem* Against M/V APL PEARL)

31.     Plaintiff refers to and by that reference incorporates as though fully set forth herein each and every allegation contained in paragraphs 1 through 30, above.

32.    According to the General Maritime Law, when a seaman becomes ill or injured while in the service of a vessel, the employer is responsible for providing the seaman with all reasonable medical care ("cure") and paying him a reasonable rate of daily financial maintenance sufficient to cover his room and board ("maintenance") from the date of his illness or injury until such time as he reaches "maximum cure."

33.    The injuries suffered by Plaintiff as a result of the Incident occurred while Plaintiff was in the service of M/V APL PEARL.  As such, Defendants, and each of them, *in personam* and the M/V APL PEARL *in rem* are legally required to furnish Plaintiff with all maintenance and cure to which he is entitled under the General Maritime Law for and during his curative treatments relating to these injuries as well as his unearned wages.

34.    As of the date of filing this Complaint, Defendants have provided maintenance and cure to Plaintiff for the injuries he suffered on or about March 16, 2015, while in the service of the M/V APL PEARL.  However, Plaintiff will be entitled to recover from Defendants, and each of them, *in personam* and the M/V APL PEARL *in rem* any and all past maintenance and cure unpaid and owing at the time of trial.

32.    If, during the pendency of this case, Defendants improperly terminate Plaintiff's maintenance and/or cure, then Plaintiff reserves his right to petition the Court to amend his Complaint to add appropriate claims for tortious breach of the duty to provide maintenance and cure, including, *inter alia*, a potential prayer for punitive damages.

33.    Plaintiff gives notice that he is asserting herein his maritime lien and his *in rem* claim against M/V APL PEARL for all unpaid maintenance and cure.

## V.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays judgment against Defendants, and each of

them, as follows:

1. That process in due form of law, according to the practices of this Honorable Court in causes of admiralty and maritime jurisprudence, may issue against *in rem* Defendant M/V APL PEARL, and that all persons having or claiming any interest therein be cited to appear and answer, under oath, all and singular, the matters alleged herein; that Plaintiff have judgment for his damages, with interest and costs; and that, if necessary, M/V APL PEARL be arrested and sold to satisfy Plaintiff's judgment;

2. That process in due form of law according to the practice of this Honorable Court issue against the *in personam* Defendants, citing them to appear and answer all and singular the matters aforesaid;

3. That Plaintiff have judgment for his past and future economic damages in amounts according to proof at trial;

4. That Plaintiff may have judgment for his past and future non-economic damages in amounts according to proof at trial;

5. That Plaintiff be awarded prejudgment interest on the amounts of the damages awarded;

6. That Plaintiff be awarded any maintenance and cure unpaid and owing at and through the time of trial in amounts necessary to make him whole;

7. For costs of suit herein; and

8. For such other relief as this Honorable Court deems just and proper.

DATED: April 5, 2017    Respectfully submitted,

BRODSKY MICKLOW BULL & WEISS LLP

By:   /s/ Kurt Micklow
        Kurt Micklow

Attorneys for Plaintiff
CEFERINO GALEON

## VI.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: April 5, 2017    Respectfully submitted,

BRODSKY MICKLOW BULL & WEISS LLP

By:  /s/ Kurt Micklow
Kurt Micklow

Attorneys for Plaintiff
CEFERINO GALEON